HONORABLE RONALD B. LEIGHTON

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| MICAHEL PHILICHI,<br><br>              Plaintiff,<br><br>   v.<br><br>UNITED STATES OF AMERICA,<br><br>              Defendant. | CASE NO. C10-5399RBL<br><br>FINDINGS OF FACT AND<br>CONCLUSIONS OF LAW |

THIS MATTER came before the Court for trial on plaintiff's claims against the defendant, United States of America, arising from the negligence of defendant's employees, various medical providers at Madigan Army Medical Center. Having reviewed the evidence, heard the testimony, and considered the arguments of counsel, the Court now enters these Findings of Facts and Conclusions of Law.

# I.  FINDINGS OF FACT

**A.  Background**

1. Plaintiff Michael Philichi ("Michael") was born on August 31, 1988 to Ted Philichi and Lisa Philichi.  He is the oldest child of three and has two younger sisters, Gina Philichi and Anna Philichi.

2. Michael obtained his high school diploma in 2008.  Until the date of his injury, Michael worked at a number of different jobs, including landscaping and various construction projects.  The summer prior to his injury, Michael had obtained employment with his father's construction company, Dahlgren Industrial, where he earned a base wage of $28.04 per hour and an overtime wage of $42.06 per hour.

3. Although he is bright, Michael was never very interested in academics and preferred working with his hands.  At the age of 20 he was injured.  At that time,  he planned to make a career in the construction trades and had taken initial steps toward obtaining a union apprenticeship.

4. On the evening of April 18, 2009, in Tacoma, Washington, an unidentified assailant stabbed Michael in the right upper extremity.  Michael was stabbed three times, including a stab that severed his median nerve.  Michael was transported by a friend to Tacoma General Hospital.  He was diagnosed at Tacoma General Hospital with a pulsating artery wound.  Tacoma General Hospital transferred Michael to Madigan Army Medical Center ("MAMC").  A nurse from Tacoma General accompanied him in the ambulance.

5. During his admission to MAMC, the nurse informed the attendant of the pulsating artery wound.  Michael advised the attendant that he had a pulsating artery wound.  Nevertheless,

personnel from MAMC simply sewed up the wound and unbeknownst to them, allowed the artery to bleed into the three compartments in his forearm. This condition caused Michael's compartment syndrome and permanent injuries to his dominant right hand and forearm.

**B.  Resultant Injuries**

6. The permanent injuries caused by MAMC's negligence include necrotic death and surgical removal of the majority of the extrinsic muscles of his hand and forearm.

7. Because of the failed diagnosis, a series of surgeries were performed in the days following his admission. The first surgery was to open up the forearm and wrist to allow the muscles to breath. The arterial wound was also sutured. In following surgeries the dead muscles were removed, leaving a deformed and dysfunctional arm. The last of these series of surgeries was performed on April 25, 2009 by Dr. Sean Ghidella, M.D., the MAMC hand surgeon who grafted plaintiff's PIN and median nerve. When asked about the degree of function that would have been lost "long term" as a result of a hypothetical PIN transection repaired at the Tacoma General operating room within hours of the initial wound, Dr. Ghidella answered:

> "Results are variable, I think it would be rare, if not impossible, for you to have no deficits whatsoever, but I would expect that you could develop four plus out of five motor strength, and that you could develop protective sensation where you have sensory deficits."

8. Douglas P. Hanel, M.D., a nationally reputed hand surgeon, assumed care of Michael Philichi following his discharge from MAMC. In his declaration he stated:

> "If Mr. Philichi's stab wounds had not been complicated by the subsequent compartment syndrome, it is likely that he could have made a good recovery within 36 months of his injury."

FINDINGS OF FACT AND CONCLUSIONS OF
LAW - 3

In his deposition, Dr. Hanel was asked specifically what he meant by "a good recovery." He explained:

> "With 20 year olds, if you have a hundred 20 year olds with a median nerve laceration at this level, 50% of them will get great recovery, get their sensation back, their protective sensation back, and get their motor function back."

So in this case, Dr. Hanel would have predicted that, absent the compartment syndrome, Michael would have gotten a pretty good functional recovery. His impairment would be that he would have good enough sensation to be able to protect himself from sharp/dull, hot versus cold.

> "I doubt that I would predict that he would ever differentiate the smooth edge of a nickel and differentiate from the rough edge of a quarter. And he would be probably 50% of the strength compared to total grip strength in his other hand."

9. In April of 2012, Michael is scheduled to have reconstructive surgery that involves removal of an innervated muscle from Michael's leg and microvascular transplantation of that muscle into his arm. This surgery will likely be followed by additional surgeries.

10. Because of Michael's disability caused by the compartment syndrome, the number and type of jobs available to him are greatly reduced. Because of his permanent injuries, Michael will be less competitive than he otherwise would have been. As a result of his permanent injuries he will require accommodations by any employer. He may take more time to complete most tasks, and he may require adaptive equipment.

11. Michael has attempted to mitigate his damages at all times, and he continues to do so to this day. He is currently enrolled at the University of Washington at Tacoma, where he is pursuing a psychology degree and a possible career as a social worker.

12. The economic losses arising from Michael's permanent injury are difficult to estimate. He has lost past earnings but also loss of future capacity (the difference between the

FINDINGS OF FACT AND CONCLUSIONS OF
LAW - 4

current earning capacity and his earning capacity prior to his permanent injuries), increased educational expenses and past and future medical assistive expenses. The testimony from both economists is unpersuasive. Mr. Moss' analysis assumes that Michael would have continued on the path he was on before he was injured, i.e., that he would have continued on to obtain full-time employment in the construction trades. Dr. Nickerson testified that the disability and deformity of Michael's dominant hand makes no difference in his loss of future earning potential. The Court rejects Dr. Nickerson's conclusion. The Court also rejects the assumption of Mr. Moss but does not render the damage item as speculative. It is difficult to determine with precision, but the Court is certain that Michael will suffer the loss of future earning potential in some significant amount.

13.     A young person can anticipate changing jobs six or seven times during their career. No one can predict what jobs they will have during that time. At every fork in the road, Michael will have a decision about what to do about change and the ability to respond to opportunities and challenges that present to him. Each decision will be affected by the disability and deficits caused by the compartment syndrome. He will be at a competitive disadvantage when he confronts these opportunities and challenges along the way. There will be a dollar value, translated in wages, that will be subtracted from every decision he makes about work. It is difficult to calculate, but it is real, substantial and permanent.

14.     As a result of his permanent injuries, Michael has suffered substantial general (non-economic) damages. He can no longer engage in the recreational activities he enjoyed prior to loss of use of his dominant right hand and arm. For example, Michael is unable to engage in the following pre-injury activities:

- Lifting heavy or bulky objects

- Vehicle repairs (including routine tire change)
- Home Improvement
- Home Maintenance
- Yard Work
- Shaking hands
- Mountain biking
- Skiing
- Landscaping
- Playing soccer
- Wake boarding
- Other sports and physical activities

In addition, Michael is extremely limited in his ability to do the following:

- Writing
- Typing
- Cooking
- Eating
- Driving
- Lifting moderately sized objects
- Bathing and showering
- Cleaning
- Washing dishes
- Tying his shoes

15. Michael's social and romantic prospects are also substantially impaired, and he has significant scarring. Michael would have had only minimal scarring, if any, but for the compartment syndrome. The grotesque deformity to his right arm and hand were wholly caused by MAMC's negligence.

16. He has, and will in the future, experience physical pain associated with the compartment syndrome and following procedures. He has, and will in the future, suffer emotional distress as a direct result of his disability.

17. Based on the foregoing, the Court finds that the general/non-economic damages caused by MAMC's negligence total $3,000,000.

18. Based on the foregoing, the Court finds that the economic damages caused by MAMC's negligence are as follows:

- Past medical expenses             $     17,511
- Lost wages to date                $   108,907
- Additional educational expenses   $     37,917
- Loss of future earning potential  $   850,000*
- Future medical and assistance costs   $   122,791
- Total economic loss               $900,982.29

*The "loss of future earning potential" component of $850,000 is the total amount of the loss over Michael's expected work life. It should be discounted to present net value using a discount rate of 2%; resulting in the sum of $619,251.51.

## II.  CONCLUSIONS OF LAW

1. These claims are brought under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b) and 2671 *et seq*. "The Tort Claims Act was designed primarily to remove the

sovereign immunity of the United States from suits in tort and, with certain specific exceptions, to render the Government liable in tort as a private individual would be under like circumstances." *Richards v. United States,* 369 U.S. 1, 6 82 S.Ct. 585, 7 L.Ed.2d 492 (1962).

2. Under the FTCA, liability and damages are determined according to the law of the place where the act or omission occurred—the State of Washington, in this case. *See* 28 U.S.C. § 1346(b); *Richards*, 369 U.S. at 10-11; *Cummings v. United States*, 704 F.2d 437, 440 (9th Cir. 1983).

3. According to mortality tables, the average expectancy of life of a man aged 21 years is 54.57 additional years. This one factor is not controlling, but should be considered by the Court in connection with all the other evidence bearing on the same question, such as that pertaining to the health, habits, and activity of the plaintiff. WPI 34.04

4. Under Washington law, the Court must determine the amount of money that will reasonably and fairly compensate Plaintiff Michael Philichi for the pain and suffering, both mental and physical, and the disability, disfigurement, and loss of enjoyment of life experienced and with reasonable probability to be experienced in the future. WPI 30.05; WPI 30.06; WPI 30.01.01. These amounts are set forth above.

5. Under Washington law, the Court must also award Plaintiff Michael Philichi the reasonable value of necessary medical care, treatment, and services and non-medical (domestic) services received to the present time and that will be required with reasonable probability in the future; the reasonable value of earning capacity lost to the present time and with reasonable probability to be lost in the future; and the reasonable value of necessary educational expenses and worker retraining. WPI 30.07.01; WPI 30.09.02; WPI 30.08.01. These amounts are set

FINDINGS OF FACT AND CONCLUSIONS OF
LAW - 8

forth above.

6. The total amount of damages awarded does not exceed the amount set forth in the administrative claim, and therefore no reduction is required under the FTCA.

7. Judgment shall be entered forthwith in the amount of $3,900,982.29.

**IT IS SO ORDERED.**

Dated this 19th day of December, 2011.

_____
RONALD B. LEIGHTON
UNITED STATES DISTRICT JUDGE

FINDINGS OF FACT AND CONCLUSIONS OF
LAW - 9